IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREGORY FUNDING LLC**, an Oregon limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>**SAKSOFT, INC.**, a Colorado corporation,<br><br>        Defendants. | Case No. 3:16-cv-480-SI<br><br>**OPINION AND ORDER** |

Richard S. Yugler and Christine N. Moore, LANDYE BENNETT BLUMSTEIN LLP, 3500 SW Fifth Avenue, Suite 3500 Portland, OR 97201. Of Attorneys for Plaintiff.

Steven Rizzo and J. Michael Mattingly, RIZZO MATTINGLY BOSWORTH PC, 1300 SW Sixth Avenue, Suite 330, Portland, OR 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiff, Gregory Funding LLC ("Gregory"), services residential loans. Defendant, Saksoft, Inc. ("Saksoft"), provides information management and software development services. In this lawsuit, Plaintiff alleges four claims against Defendant: (1) breach of express contract; (2) breach of the implied contractual duty of good faith and fair dealing; (3) breach of the implied warranty of fitness for a particular purpose under the Uniform Commercial Code

PAGE 1 – OPINION AND ORDER

("UCC"); and (4) intentional misrepresentation.[1] Defendant moves for an order dismissing Plaintiff's second, third, and fourth claims under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure. Defendant also moves under Rule 12(e) for an order requiring Plaintiff to make certain allegations more definite and certain. For the following reasons, Defendant's motion is granted in part and denied in part.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[1] Plaintiff titles its fourth claim "misrepresentation" and clarifies in its response to Defendant's motion to dismiss that Plaintiff is asserting a claim of intentional, rather than negligent, misrepresentation.

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

For purposes of this motion, the Court accepts as true the well-pleaded material facts in Plaintiff's Complaint ("Compl.") (ECF 1). Plaintiff, an Oregon limited liability company, engages in the business of residential loan servicing on behalf of lenders. Defendant, a Colorado corporation, is a wholly-owned subsidiary of Saksoft Limited, a company organized under the laws of India. Defendant is primarily engaged in the business of providing information management and software development.

On or about May 16, 2012, Plaintiff entered into a written agreement with Defendant, entitled "Master Software Services Agreement" ("Master Agreement"), which included two statements of work, one dated April 25, 2012 ("SOW 1") and the other dated February 25, 2013 ("SOW 2"). (The Master Agreement, SOW 1, and SOW 2, are collectively referred to as the "Contract.") The purpose of the Contract was for Defendant to create for Plaintiff a custom mortgage servicing platform in the form of "Concept to Completion" software.

Under the Contract, Defendant had discretion to determine staffing, coding, programming, and methods for completing the software that would comprise Plaintiff's mortgage servicing platform. Compl. ¶ 27. Defendant was to provide Plaintiff with a "Synergy Team," consisting of an onsite project manager, two developers, and an offshore project manager in India, whose duties would be governed by the SOWs. Compl. ¶ 8. In developing the platform,

PAGE 3 – OPINION AND ORDER

the Synergy Team would employ the methods described in SOW 1 as "C2C-Concept to Completion development, testing, implementation, and post-production." Compl. ¶ 9. In SOW 1, Defendant stated that its services would provide a "30% to 40% cost savings over an internal staffing model." Compl. ¶ 10.

The Master Agreement limits the liability of Defendant in the event of misrepresentation, negligence, breach of contract, or failure to meet conditions specified in the SOWs to no more than 100 percent of the fees paid under the SOWs. Compl. ¶ 12; Master Agreement at 6, ¶ 7 (ECF 23 at 7). The Master Agreement also precludes recovery of any "indirect or consequential loss or damage." Master Agreement at 6, ¶ 8 (ECF 23 at 7).

In approximately October 2012, Plaintiff considered the first onsite project manager supplied by Defendant to be inadequate and requested a replacement. Defendant responded by engaging Jayakumar Viswanathan to create a plan to get the project back on track and to hire a new onsite project manager. In February 2013, the project was behind schedule, and Plaintiff and Defendant entered into SOW 2 to supplement the Master Agreement and SOW 1 by, among other things, adding a business analyst position to the Synergy Team. On March 1, 2013, several months after Mr. Viswanathan was hired, he found a replacement onsite project manager for Plaintiff's project. Defendant also agreed that Plaintiff need not pay Defendant's invoices during the two months that it took for Mr. Viswanathan to find a replacement onsite project manager. The new project manager hired three different business analysts in succession to fill the newly created position under SOW 2, but Plaintiff found each to be inadequate. Plaintiff alleges that after interviewing and hiring one business analyst, Defendant sent a different person to work as the business analyst for Plaintiff, whom Plaintiff had not previously interviewed or approved. Compl. ¶ 17.

In January 2015, Plaintiff hired its own business analyst and terminated the business analyst provided by Defendant under SOW 2. Plaintiff refused to pay Defendant's invoices for July and August, asserting that the "project is a disaster," and Plaintiff also has refused to pay Defendant's invoices for November and December 2015. Compl. ¶ 20. Between October 16, 2015, and February 17, 2016, Plaintiff and Defendant attempted to negotiate a resolution of their disputes, but were unsuccessful. Plaintiff filed this action on March 21, 2016. The parties agree that Oregon law applies.

## DISCUSSION

Defendant does not move against Plaintiff's first claim, alleging breach of express contract. Instead, Defendant moves to dismiss: (a) Plaintiff's second claim, alleging breach of the implied covenant of good faith and fair dealing; (b) Plaintiff's third claim, alleging breach of warranty in the sale of goods; and (c) Plaintiff's fourth claim, alleging intentional misrepresentation. Defendant also moves for an order requiring Plaintiff to make more definite and certain its factual allegations contained in Compl. ¶ 22(c). Finally, Defendant moves either to dismiss a portion of Plaintiff's request for damages or, alternatively, for an order requiring Plaintiff to make more definite and certain its damage allegations contained in Compl. ¶ 23.

**A.  Breach of Implied Duty of Good Faith and Fair Dealing**

Under Oregon law, every contract contains an implied duty of good faith and fair dealing. *Klamath Off-Project Water Users, Inc. v. Pacificorp*, 237 Or. App. 434, 445, (2010). "A duty of good faith and fair dealing," however, "may be implied as to a disputed issue *only* if the parties have not agreed to an express term that governs that issue." *Oregon Univ. Sys. v. Oregon Pub. Employees Union, Local 503*, 185 Or. App. 506, 511 (2002) (emphasis added). Thus, the implied duty cannot provide a remedy for an "unpleasantly motivated act that is permitted expressly by the contract." *Zygar v. Johnson*, 169 Or. App. 638, 645 (2000).

PAGE 5 – OPINION AND ORDER

When a contract allows a party to exercise discretion, however, and that discretion is exercised for purposes inconsistent with the objectively reasonable expectations of the parties, the party exercising discretion still may be found to be acting in bad faith. *Best v. U.S. Nat. Bank of Oregon*, 303 Or. 557, 563 (1987). After deciding *Best*, the Oregon Supreme Court appears to have constrained the holding in that case. In *Tolbert v. First Nat. Bank of Oregon*, 312 Or. 485 (1991), which began as a companion case to *Best*, the Oregon Supreme Court held that "it is only the objectively reasonable expectations of parties that will be examined in determining whether the obligation of good faith has been met." *Id*. at 494. Accordingly, the Court found that the parties' agreement to a contract that expressly provided one party with discretion to set price terms was evidence of the parties' reasonable expectations. *Id*.

During the next several years, the Oregon Supreme Court decided *Pac. First Bank v. New Morgan Park Corp*., 319 Or. 342 (1994), and *Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp*., 320 Or. 638 (1995). In *Pac. First Bank*, the Court held that when a contract expressly provides for a unilateral exercise of discretion, the duty of good faith cannot circumscribe that discretion. The Court explained: "[T]he duty of good faith operates to effectuate the reasonable expectations of the parties as determined under the terms of their contract. Here, those terms demonstrate that the parties agreed to—that is, reasonably expected—a unilateral, unrestricted exercise of discretion." *Pac. First Bank*, 319 Or. at 354; *see also Uptown Heights*, 320 Or. at 647–48 ("the reasonable contractual expectations of the parties are shown[ ] by the unambiguous terms of the contract" (emphasis added; internal quotation marks and citation omitted)).

The Oregon Court of Appeals has continued to develop this doctrine, noting that the reasonable expectations of the parties to a contract may include evidence from outside the terms

of the contract and generally present a question of fact. *See Iron Horse Eng'g Co., v. Nw. Rubber Extruders, Inc.*, 193 Or. App. 402, 421 (2004) ("[H]olding the parties to industry standards and practices effectuates the reasonable contractual expectations of the parties."); *see also Brown v. Am. Prop. Mgmt. Corp.*, 167 Or. App. 53, 63 (2000) ("[U]pon our review of the record, we conclude that there is evidence . . . from which a jury could have concluded that defendant exercised its authority . . . in bad faith . . . ."); *Cantua v. Creager*, 169 Or. App. 81, 97 (2000) (noting that "the question of whether the defendant acted with the requisite bad motive is a question of fact for the jury").

At oral argument, Plaintiff confirmed that its second claim, alleging breach of the implied covenant of good faith and fair dealing, is limited to its allegations relating to Defendant's staffing decisions. Plaintiff's Complaint lists several instances in which Defendant allegedly supplied inadequate staff for Plaintiff's "Synergy Team." *See, e.g.*, Compl. ¶ 22(b). Notably, Plaintiff describes instance when, after a person was selected to be hired, a different person was sent to Plaintiff's business to fill the business analyst position for the project. Compl. ¶ 17. Although an express term of the parties' Contract allowed Defendant to exercise discretion over staffing, the Contract did not specify the precise method with which Defendant was to exercise staffing discretion. Thus, the duty of good faith still applies. As limited to Defendant's exercise of discretion concerning staffing decisions for Plaintiff's project, Plaintiff alleges sufficient facts to state a facially plausible claim for breach of the implied duty of good faith and fair dealing. Defendant's motion to dismiss Plaintiff's second claim is denied.

**B. Breach of Implied Warranty of Fitness for a Particular Purpose**

Defendant argues that Plaintiff's third claim, alleging breach of the implied warranty of fitness for particular purpose pursuant to Or. Rev. Stat. § 72.3150, which is materially identical to UCC § 2-315, should be dismissed because the Contract at issue is primarily one for services

PAGE 7 – OPINION AND ORDER

and, thus, the UCC does not apply. Chapter Two of the UCC, as adopted under Oregon law, applies only to transactions in the sale of goods. Or. Rev. Stat. § 72.1020. Goods are defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract . . . ." Or. Rev. Stat. § 72.1050.

When a contract involves both goods and services, a court should "look to the essence of the agreement." *RRX Industries, Inc. v. Lab-Con, Inc.*, 772 F.2d 543, 546 (9th Cir. 1985). In other words, in such cases a court should consider whether "the predominant factor," "thrust," or "purpose" of the contract "is the rendition of service, with goods incidentally involved . . . or is a transaction of sale with labor incidentally involved . . . ." *United States ex rel. Bartec Industries, Inc. v. Union Pacific Co.*, 976 F.2d 1274, 1277 (9th Cir. 1992) (quoting *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 871 (9th Cir. 1986).

"The issue of mixed or hybrid goods and services often arises in the context of transactions involving software." *TK Power, Inc. v. Textron, Inc.*, 433 F. Supp. 2d 1058, 1061 (N.D. Cal. 2006)). "Because software packages vary depending on the needs of the individual consumer, [the Ninth Circuit] appl[ies] a case-by-case analysis." *RRX Indus., Inc*., 772 F.2d at 546; *see also Simulados Software, LTD v. Photon Infotech Private, LTD*, 40 F. Supp. 3d 1191,1199 (N.D. Cal. 2014) ("The primary test used by courts to determine whether software is a good under the UCC is the predominant factor test, where courts look to the 'essence of the agreement' on a case-by-case basis to decide how to characterize the transaction. Courts determine whether the predominant factor or purpose of the contract is rendition of services, with goods incidentally involved, or is rendition of goods, with labor incidentally involved." (citations omitted)).

PAGE 8 – OPINION AND ORDER

Although there is no authority from the Ninth Circuit that controls the instant dispute, several district courts have considered whether the UCC applies to similar contracts that concern the development of new software, generally referred to as "concept to completion" or "concept to realization" projects. In one case, the court concluded that the UCC did not apply to a contract in which one party was to develop a software system from scratch (identified as "concept to realization"), and in which the developer would be paid on a time and materials basis. *Pearl Invs., LLC v. Standard I/O, Inc.*, 257 F. Supp. 2d 326, 353 (D. Me. 2003). In another case, the court found, in resolving a motion to dismiss, that because the defendant was to develop new software for the plaintiff, the contract was one for services and the UCC did not apply. *Sys. Am., Inc. v. Rockwell Software, Inc.*, 2007 WL 218242, at *4 (N.D. Cal. Jan. 26, 2007). In that case, the court explained that although the contract was formed with the ultimate purpose of creating software that could be sold as goods to the plaintiff's customers, that purpose did not transform a software development contract into a contract for the sale of goods. *Id*.

In another case, the defendant and the plaintiff agreed jointly to develop a new software product. *Multi-Tech Systems, Inc. v. Floreat, Inc.*, 2002 WL 432016, at *3 (D. Minn. Mar. 18, 2002). The court determined that the parties' method of dealing with each other and the terms of the contract all indicated that the plaintiff paid mainly for the defendant's contribution of knowledge and expertise to the design and development of the software product. *Id*. Thus, the court held that services were the predominant purpose of the contract, with goods incidentally involved, and that the UCC did not apply. *Id*. at *4.

Although Plaintiff did not originally attach to the Complaint a copy of the Contract, Plaintiff did quote from portions of the Contract throughout the Complaint. Compl. ¶¶ 7, 8, 9, 10, 12, 13. Because the nature of the parties' relationship as set forth in the Contract is relevant to

PAGE 9 – OPINION AND ORDER

determining whether the predominant factor in the agreement between the parties was goods or services, the Court requested that Plaintiff file a copy of Contract, and Plaintiff did so. ECF 23. The Contract may be considered by the Court in ruling on Defendant's motions.[2]

Considering the Contract as a whole, the Court finds that it was one predominantly for services, with goods only incidentally involved. The Master Agreement is entitled the "Master Software Services Agreement" and labels Defendant as the "Service Provider." Master Agreement at 1 (ECF 23 at 2). Defendant agreed to provide services as a "work made for hire." Master Agreement at 2 (ECF 23 at 3). One of the promises by Defendant that Plaintiff alleges was breached was the promise in SOW 1 that by using Defendant's services Plaintiff would save 30 to 40 percent as compared to an "internal staffing model." Compl. ¶ 10. This is a promise of savings in labor, not purchase of goods.

Additionally, as was the case in *Pearl Investments*, Defendant was to develop the custom software for Plaintiff through "Concept to Completion" or "Concept to Realization" development, and Defendant was to be paid based on monthly invoices for the hours worked each month. SOW 1 at § 5.2 (ECF 23 at 16); SOW 1 at § 6.4 (ECF 23 at 24). The parties' Contract in this case also resembles the agreement in *Multi-Tech Systems*, where the plaintiff was

---

[2] As a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion under Fed. R. Civ. P. 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). When matters outside the pleadings are presented to the court, a motion to dismiss generally must be converted to a motion for summary judgment under Rule 56, with the parties being given an opportunity to present all pertinent material. Fed. R. Civ. P. 12(d). There are, however, two exceptions to this rule. First, a court may consider "material which is properly submitted as part of the complaint." *Lee*, 250 F.3d at 688. This includes both documents physically attached to the complaint and those on which the complaint "necessarily relies" whose authenticity is not contested. *Id*. Second, the court may take judicial notice of "matters of public record" pursuant to Rule 201(b) of the Federal Rules of Evidence without being required to convert the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. *Lee*, 250 F.3d at 688–89.

contracting with the defendant primarily for the defendant's knowledge and expertise. SOW 1 detailed Defendant's technical depth, domain expertise, and knowledge of industry best practices. Compl. ¶ 10. Additionally, the majority of Plaintiff's allegations concern Defendant's purportedly inadequate contribution of knowledge and expertise to the development of the software by providing less than fully competent project managers and analysts. Compl. ¶¶ 14-19. Indeed, Plaintiff's second claim alleges that Defendant breached the Contract's implied covenant of good faith and fair dealing in the manner in which Defendant exercised its discretion over staffing decisions for Plaintiff's project.

The cases cited by Plaintiff in which the UCC applied to software contracts are distinguishable. Both *RRX Industries, Inc.*, 772 F.2d at 543, and *Phoenix Solutions, Inc. v. Sony Electronics, Inc.*, 637 F. Supp. 2d 683 (2009), involved contracts concerning the installation, modification, and repair of software, not the creation of new custom software. In those cases, the software was bought "off the shelf" and the services rendered were merely support services. Thus, in those cases, services were merely incidental to the goods involved in those contracts.

In *Advent Systems Ltd. v. Unisys. Corp.*, 925 F.2d 670 (3rd Cir. 1991), the court explained that looking to the compensation structure of the contract can be useful in determining whether goods or services are incidental in a contract. In that case, the court concluded that the contract was one primarily for goods, rather than services, because payments were to be made through individual purchases of hardware and software and not based on fees for services or work performed. *Id.* at 676. In the instant case, however, the opposite is true. Defendant charged Plaintiff an hourly fee for labor and sent Plaintiff monthly invoices under the Contract. Here, the Contract states that the "*service provider* shall invoice the client for payment of fees in accordance with the provisions of the relevant SOW." Master Agreement at 5 (ECF 23 at 4)

PAGE 11 – OPINION AND ORDER

(emphasis added). Accordingly, based on Plaintiff's allegations in the Complaint and the Contract itself, services were the thrust of the Contract, while goods were involved only incidentally. Thus, the UCC does not govern the Contract. Defendant's motion to dismiss Plaintiff's claim for breach of implied warranty of fitness for a particular purpose is granted.

## C. Intentional Misrepresentation

Defendant moves to dismiss Plaintiff's fourth claim, alleging intentional misrepresentation, or fraud. In Oregon, a plaintiff must allege the following elements to state a claim for fraud:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; (9) and his consequent and proximate injury.

*Or. Pub. Emps.' Ret. Bd. ex rel. Or. Pub. Emps.' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 424 (2004) (quotation marks omitted).

In addition, Plaintiff's claim of intentional misrepresentation is subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure. That rule provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

Rule 9(b) applies not only to federal causes of action, but also to state-law causes of action alleged in federal court. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "The Federal Rules of Civil Procedure apply irrespective of the source of subject matter jurisdiction, and

PAGE 12 – OPINION AND ORDER

irrespective of whether the substantive law at issue is state or federal." *Vess*, 317 F.3d at 1102, *citing Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

In addition, Rule 9(b) applies to all allegations, or averments, of fraud in all civil cases in federal court, even when fraud is not an essential element of the claim. As explained by the Ninth Circuit in *Vess*:

> In cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b). . . .
>
> In other cases, however, a plaintiff may choose not to allege a unified course of fraudulent conduct in support of a claim, but rather to allege some fraudulent and some non-fraudulent conduct. In such cases, only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. The text of Rule 9(b) requires only that in "all *averments of fraud* . . ., the circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ.P. 9(b) (emphasis added).[3] The rule does not require that allegations supporting a claim be stated with particularity when those allegations describe non-fraudulent conduct.
>
> In such cases, application of Rule 9(b)'s heightened pleading requirements only to "averments" of fraud supporting a claim rather than to the claim as a whole not only comports with the text of the rule; *it also comports with the rule's purpose of protecting a defendant from reputational harm. . . . Fraud allegations may damage a defendant's reputation regardless of the cause of action in which they appear, and they are therefore properly subject to Rule 9(b) in every case.* To require that non-fraud allegations be

---

[3] An "averment" is a positive declaration or affirmation of fact; an assertion or allegation in a pleading is an averment. Bryan A. Garner, ed., BLACK'S LAW DICTIONARY 156 (9th ed. 2009). In 2007, the text of Rule 9 was amended to make it "more easily understood . . . . These changes are intended to be stylistic only." Fed. R. Civ. P. 9 Advisory Committee's Note, 2007 Amendment. Thus, the change from "averments of fraud" to "alleging fraud" does not affect this analysis.

PAGE 13 – OPINION AND ORDER

> stated with particularity merely because they appear in a complaint alongside fraud averments, however, serves no similar reputation-preserving function, and would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a).

*Vess*, 317 F.3d at 1103–05 (first emphasis in original; second emphasis added).

To satisfy the pleading requirements of Rule 9(b), a plaintiff "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and alteration omitted). The plaintiff's allegations must provide "notice of the particular misconduct which is alleged to constitute the fraud charged," in enough detail to permit the defendant to "defend against the charge and not just deny that [it has] done anything wrong." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 999 (9th Cir. 2010) (quotation marks omitted). Both the plausibility requirement of Rule 8(a) and the particularity requirement of Rule 9(b) apply to allegations of fraud. *Cafasso*, 637 F.3d at 1055. Allegations of scienter, however, may be pled generally, Fed. R. Civ. P. 9(b), but must still include sufficient factual material to be plausible. *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014).

In its Complaint, Plaintiff alleges two locations of Defendant's fraud. First, Plaintiff alleges that Defendant's "promises in the parties' Contract were knowingly false when made or were made with reckless indifference to its ability to perform those promises." Compl. ¶ 35. This allegation is insufficient to satisfy Rule 9(b), primarily because it does not identify the specific allegedly fraudulent statements in the Contract. As Plaintiff acknowledged during oral argument, Plaintiff does not assert that every statement in the Contract was knowingly or recklessly false. To satisfy Rule 9(b), Plaintiff must identify the specific statements in the parties' Contract that Plaintiff alleges were knowingly or recklessly false when made.

Second, Plaintiff alleges that, "[a]s in inducement to enter into the Contract, and for Contract continuations beyond the minimum one year term, [Defendant] falsely represented on its consolidated website with its parent company" certain specified allegedly false statements. Compl. ¶ 36. Although Plaintiff identifies the specific allegedly fraudulent statements, this allegation is insufficient to satisfy Rule 9(b), primarily because it does not identify the "who," "when," or "how" that the rule requires. To satisfy Rule 9(b), Plaintiff must, at the minimum, identify who read which allegedly false website representation, when (*e.g.*, before Plaintiff entered into the Contract), and how that allegedly false representation was reasonably relied upon by Plaintiff.

Further, many of the allegedly fraudulent representations contained on Defendant's website appear to be no more than commercial puffery. For example, Plaintiff alleges reliance on the website statements that Defendant will "establish a roadmap for your business information journey" and will "understand the problem; Plan the solution(s)." Compl. ¶36(a). "[G]eneralized, vague and unspecific assertions constitute[e] mere 'puffery' upon which a reasonable consumer [cannot] rely." *Glen Holly Entm't., Inc. v. Tektronix, Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (holding that statements made by company regarding film editing programs that stated new software would be "released within a few months," and that it would "develop a more aggressive marketing campaign to advertise" the program could not form the basis for a fraud or negligent misrepresentation claim because they were puffery.); *see also Cook, Perkiss, and Lieh, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990). To satisfy Rule 9(b), Plaintiff must (a) identify the specific allegedly fraudulent website statements that Plaintiff relied upon; and (b) plausibly allege facts showing that the statements that Plaintiff relied upon are not mere puffery.

PAGE 15 – OPINION AND ORDER

Defendant's motion to dismiss Plaintiff's fourth claim, alleging intentional misrepresentation, is granted. Plaintiff may replead.

**D. Paragraph 22(c)**

Defendant moves to make more definite and certain paragraph 22(c) of Plaintiff's Complaint. A court may order a more definite statement if the pleading "is so vague or ambiguous that the [opposing] party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). A motion for a more definite statement must "point out the defects complained of and the details desired." *Id*. Paragraph 22(c) of Plaintiff's Complaint reads:

> Saksoft has materially breached its contractual obligations to Gregory . . . [b]y not promptly complying with Gregory's reasonable requests for information to facilitate development of a complete vision for the project necessary for product decisions to achieve that vision by failing to achieve transparency for sharing business status, goals, achievements and missteps among team members

Compl. ¶ 22(c).

Although paragraph 22(c) is not a model of clarity, it is not so vague that Defendant cannot reasonably prepare a response. Plaintiff is alleging that Defendant has not complied with its contractual obligation to disclose information upon Plaintiff's request and has thus failed to ensure transparency in the project. Master Agreement at 3 (ECF 23 at 4). Further, Defendant has not pointed to any additional details desired in reference to this allegation. Defendant's motion to make more definite and certain paragraph 22(c) of the Complaint is denied.

**E. Paragraph 23**

Defendant moves to dismiss or in the alternative make more definite and certain paragraph 23 of Plaintiff's Complaint pertaining to damages sought for Plaintiff's claim for breach of contract. Paragraph 23 states:

>> As a direct result of that breach, Plaintiff has sustained economic damage in an amount to be proven at trial and determined by a jury, but presently calculated to be a full refund of the $1,319,720 paid to date, and costs and expenses incurred, in an effort to mitigate the loss consisting of $230,400 for additional Gregory Staff time, $13,400 for additional licenses, and $7,100 in penalties for a total of approximately $1,570, 620, plus prejudgment interest at the Oregon statutory rate of 9% per annum until paid.

Compl. ¶ 23.

The Master Agreement provides:

> 7. Except as provided in this Section, the liability of either the Service Provider or Client under or in connection with this Agreement whether for negligence, misrepresentation, breach of contract or otherwise, for direct loss or damage arising out of the failure to meet conditions recited in the SOW, including conditions relating to schedules and timing of Deliverables set forth therein, shall not exceed 100% of the fees paid under the SOW.
>
> 8. Except as provided in this Section, neither party shall be liable to the other for indirect or consequential loss or damage or including indirect or consequential loss of profits, business, revenue, goodwill or anticipated savings of an indirect nature or loss or damage incurred by the other party as a result of third party claims relating to a failure to meet conditions of the Deliverables as recited in the SOW, including conditions relating to schedules and timing of Deliverables set forth therein.

Master Agreement at 6, ¶¶7-8 (ECF 23 at 7) (emphasis added).

Defendant argues that Plaintiff, in paragraph 23, seeks damages in excess of the agreed-upon liability limitation contained in the parties' Contract. That a form of relief is or might be unavailable under a cause of action, however, does not render that cause of action susceptible to a Rule 12(b)(6) motion to dismiss. *Glob. Res. Mgmt. Consultancy, Inc. v. Geodigital Int'l Corp.*, 2016 WL 1065796 at *3 (C.D. Cal Mar. 17, 2016). Thus, the Court declines to dismiss Plaintiff's breach of contract claim for damages that may be unavailable under the Contract at this stage of the proceedings.

PAGE 17 – OPINION AND ORDER

In the alternative, Defendant moves under Rule 12(e) for an order directing Plaintiff to make its damages allegations more definite and certain. Plaintiff's Complaint is not so vague that Defendant cannot prepare a response. Thus, Defendant's motion to dismiss or make more definite and certain paragraph 23 of the Complaint is denied.

That said, at some point, whether it be at summary judgment, at the pretrial conference, or at trial, Defendant will be arguing that Plaintiff may not seek damages in excess of the limitations stated in the parties' Contract. To facilitate the Court's analysis of that issue, Plaintiff should specify in its forthcoming amended complaint, which of Plaintiff's alleged damages constitute "direct loss or damage arising out of the failure to meet conditions recited in the SOW" and thus are subject to the limitations set forth in paragraph 7 of the Master Agreement and which of Plaintiff's alleged damages are excluded from the limitation of paragraph 7. Further, to the extent that Plaintiff contends that some of its damages do not fall within the exclusion under paragraph 8 of the Master Agreement of "indirect or consequential loss or damage," Plaintiff should clearly allege that contention and which specific alleged damages are outside of the exclusion of paragraph 8. Such precision and clarity at this stage will assist the Court and the parties later in these proceedings.

## CONCLUSION

Defendant's motions to dismiss and to make more definite and certain (ECF 12) are GRANTED IN PART AND DENIED IN PART as set forth in this Opinion and Order. Plaintiff has leave to file an amended complaint on or before September 12, 2016.

**IT IS SO ORDERED**.

DATED this 24th day of August, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge

PAGE 18 – OPINION AND ORDER